IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| VALLEY FORGE INSURANCE CO., <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN SAFETY RISK RETENTION GROUP, INC. <br><br> Defendant. | No. CV-05-71-HU <br><br> OPINION & ORDER |

Gregory L. Baird
GORDON & POLSCER, L.L.C
9755 S.W. Barnes Orad. Suite 650
Portland, Oregon 97225

    Attorney for Plaintiff

Bruce R. Gilbert
Wendy D. Vierra
SMITH, FREED & EBERHARD, P.C.
1001 S.W. Fifth Avenue, Suite 1700
Portland, Oregon 97204

    Attorneys for Defendant

HUBEL, Magistrate Judge:

    Plaintiff Valley Forge Insurance Company brings this action for declaratory relief and contribution against defendant American Safety Risk Retention Group, Inc. Both parties move for partial

1 - OPINION & ORDER

summary judgment. I grant plaintiff's motion as to the duty to defend, but deny the motion as to the duty to indemnify. I deny defendant's motion.

BACKGROUND

In July 2003, the Vista House Condominium Association (the Association), filed a breach of contract and negligence action in Multnomah County Circuit Court, against the developers, builders, and sellers of the Vista House condominiums. On August 6, 2003, Bingham Construction, the general contractor and one of the defendants in the action, answered the Amended Complaint generally denying the allegations and setting forth a Third-Party Complaint, naming, among others, the Harver Company, as a third-party defendant.

Harver was a subcontractor on the condominium construction project. Harver's work involved the installation of the exterior insulating and finishing systems (EIFS), roof, flashing, windows, exterior sheathing, and metal stud framing. Plaintiff issued four annual policies to Harver providing coverage from 1996 to 2000, and, upon tender of the underlying action by Harver, agreed to defend Harver in the underlying action.

Defendant issued Policy Number XGI 00-1564-001 to Harver for the policy period of April 18, 2000, to April 18, 2001.

At some point after being served with the underlying action, Harver tendered the defense of that action to defendant. On March 12, 2004, defendant sent a letter to Harver acknowledging that it had received the tender of defense, and had reviewed the Amended Complaint and the terms of the insurance policy, but further stated that it was unable to either accept or reject the tender until it

2 - OPINION & ORDER

further investigated the claim.

In September 2004, the parties in the underlying litigation participated in mediation. Harver notified defendant of the mediation and impending trial date.

Defendant did not provide a written coverage determination regarding Harver's tender and did not participate in the mediation. When contacted by telephone during the mediation, defendant orally advised Harver's counsel that it had no duty to defend or indemnify because the insured had knowledge of the property damage before the issuance of defendant's policy.

Harver ultimately settled the underlying claims against it for $1 million, with plaintiff and another of Harver's insurers funding the settlement. The other insurer then assigned all of its contribution rights to plaintiff. This action followed.

STANDARDS

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"If the moving party meets its initial burden of showing 'the absence of a material and triable issue of fact,' 'the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense.'" Intel Corp. v.

3 - OPINION & ORDER

Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting Richards v. Neilsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987)). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Celotex, 477 U.S. at 322-23.

The substantive law governing a claim determines whether a fact is material. T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). All reasonable doubts as to the existence of a genuine issue of fact must be resolved against the moving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986). The court should view inferences drawn from the facts in the light most favorable to the nonmoving party. T.W. Elec. Serv., 809 F.2d at 630-31.

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Id.; In re Agricultural Research and Tech. Group, 916 F.2d 528, 534 (9th Cir. 1990); California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).

## DISCUSSION

Plaintiff seeks contribution and indemnity for all costs and expenses it incurred in defending Harver in the underlying action and paid on Harver's behalf towards settlement, as well as its attorney's fees in this matter, plus interest. Plaintiff moves for summary judgment on the duty to defend and the duty to indemnify claims, but makes no motion at this time on the issue of damages. Defendant moves for partial summary judgment on the indemnification

4 - OPINION & ORDER

claim only.

I. Relevant Policy Language

As noted above, defendant's insurance policy is for the policy period of April 18, 2000, to April 18, 2001. Exh. E to Baird Affid. at p. 1. The policy contains an insuring agreement stating that defendant "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Id. at p. 11. The policy's insuring agreement also provides that defendant "will have the right and duty to defend the insured against any 'suit' seeking those damages." Id. However, defendant has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." Id.

"Property damage" is defined as

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it.

Id. at p. 23.

The policy covers "bodily injury" and "property damage" only if

    (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

    (2) The "bodily injury" or "property damage" occurs during the policy period.

Id. at p. 11.

The policy defines "occurrence" as:

5 - OPINION & ORDER

> [A]n accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance. "Property damage", "bodily injury" or "personal and advertising injury" which commenced prior to the effective date of this insurance will be deemed to have happened prior to, and not during, the term of this insurance.

Id. at p. 37. That provision further provides that

> [t]here shall be no obligation of the Company to defend any "suit" against the insured or any Additional Insured if such "suit" does not allege an "occurrence" as defined in this Endorsement.

Id.

## II. Insurance Policy Interpretation Standards

The "question of [insurance] policy interpretation is one of law, . . ., and [the court's] task is to determine the intent of the parties." Groshong v. Mutual of Enumclaw Ins. Co., 329 Or. 303, 307, 985 P.2d 1284, 1287 (1999) (citation omitted); see also Hoffman Constr. Co. of Alaska v. Fred S. James & Co. of Or., 313 Or. 464, 469, 836 P.2d 703, 706 (1992) ("[T]he primary and governing rule of the construction of insurance contracts is to ascertain the intention of the parties.") (internal quotation omitted). The court determines the parties' intent "from the terms and conditions of the policy." Groshong, 329 Or. at 307, 985 P.2d at 1287.

A term is ambiguous if

> two or more plausible interpretations of that term withstand scrutiny, i.e., continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole.

Hoffman Constr., 313 Or. at 470, 836 P.2d at 706.

When the policy does not define the terms at issue, the court "resort[s] to various aids of interpretation to discern the

6 - OPINION & ORDER

parties' intended meaning." Groshong, 329 Or. at 307-08, 985 P.2d at 1287. The court first examines the plain meaning of the term at issue. Id. at 308, 985 P.2d at 1287. If the meaning of the term or phrase at issue "is not, on its face, plain, [the court] proceeds to [its] second aid to interpretation[-] . . . examin[ing] the phrase in light of the particular context in which . . . [it] is used in the policy and the broader context of the policy as a whole." Id. at 312, 985 P.2d at 1289 (internal quotation omitted).

If, after application of such analysis, the court determines that the term is ambiguous, the court may then consider extrinsic evidence in interpreting the insurance contract. Protection Mut. Ins. Co. v. Mitsubishi Silicon Am. Corp., 164 Or. App. 385, 397-98, 992 P.2d 479, 486 (1999) (court may consider extrinsic evidence in interpreting an insurance contract only if it first finds the policy to be ambiguous). Finally, if there is no relevant extrinsic evidence to consider, or the term remains ambiguous, the term is to be construed against the insurer, the party which drafted the policy. Groshong, 329 Or. at 312, 985 P.2d at 1289.

As the Hoffman court explained:
> [W]hen two or more competing, plausible interpretations prove to be reasonable after all other methods for resolving the dispute over the meaning of particular words fail, then the rule of interpretation against the drafter of the language becomes applicable, because the ambiguity cannot be permitted to survive. It must be resolved.

Hoffman, 313 Or. at 470-71, 836 P.2d at 706-07.

On the other hand, where the contract unambiguously expresses the intent to provide coverage or to not provide coverage, the contract language is controlling. See Allstate Ins. Co. v. State Farm Mutual Auto. Ins. Co., 67 Or. App. 623, 627, 679 P.2d 879, 881

7 - OPINION & ORDER

(1984) (where contract language is unambiguous, courts will "apply those terms and will not create coverage where none was intended by the contract.").

III. Duty to Defend

The duty to defend is determined by comparing the terms of the insurance agreement with the allegations of the complaint. Klamath Pac. Corp. v. Reliance Ins. Co., 151 Or. App. 405, 413, 950 P.2d 909, 914 (1997), on recon., 152 Or. App. 738, 955 P.2d 340 (1998). In determining the duty to defend, all allegations are assumed to be true, Hedmann v. Liberty Mut. Fire Ins. Co., 158 Or. App. 510, 513, 974 P.2d 755, 757 (1999), and any ambiguity with respect to whether the allegations could be covered is resolved in favor of the insured. Western Equities, Inc. v. St. Paul Fire & Marine Ins. Co., 184 Or. App. 368, 371, 56 P.3d 431, 433 (2002). If the allegations provide any potential basis on which coverage may arise, the insurer's duty to defend arises. Klamath Pac. Corp., 152 Or. at 741, 955 P.2d at 341. Where some, but not all, conduct is potentially covered, the insurer must still defend the entire action. Id. at 413, 950 P.2d at 914.

Plaintiff argues that defendant had a duty to defend Harver in the underlying action because the Third-Party Complaint alleged covered property damage that occurred during the policy period. Plaintiff notes that in the third-party action against Harver, Bingham alleges that it is entitled to contractual and common-law indemnity from Harver for any liability incurred by Bingham in the Vista House litigation related to "damage caused by defects or deficiencies within the scope of work of Harver." Exh. B to Baird Affid. at ¶ 33. The Vista House Amended Complaint, incorporated in

8 - OPINION & ORDER

the Bingham Third-Party Complaint, included various contractual and negligence causes of action alleging that property damage was the result of "defective construction and design, improper materials, and non-compliance with the Oregon Building Code." Exh. A to Baird Affid. at ¶ 10.

Plaintiff argues that the underlying action plainly alleged the possibility of water intrusion damage taking place during defendant's policy period. Plaintiff notes that the Vista House Amended Complaint alleged that the individual owners began purchasing and occupying their units in 1996, and made no allegation that the defective conditions were repaired any time prior to the filing of the Complaint. Accordingly, plaintiff contends, the allegations of the underlying complaint raise the possibility of water intrusion damages taking place during the American Safety policy period sufficient to trigger a duty to defend.

In response, defendant argues that the alleged property damage in the underlying action must reasonably be construed as taking place prior to the policy period. Defendant notes that construction of the Vista House condominiums took place from 1995 to 1997. Exh. B to Baird Affid. at ¶ 19 (Bingham Answer/Third-Party Complaint). The individual unit owners began purchasing the condominiums in 1996. Exh. A to Baird Affid. at ¶ 8 (Vista House Condo. Assn. Amended Compl.).

Defendant states that although the complaints in the underlying action do not specifically set forth a date upon which the property damage first started to occur, a reading of the complaints necessarily leads to only one reasonable inference -

9 - OPINION & ORDER

that the damage must have necessarily started during, or immediately following, the construction of the condominiums which concluded in 1997. Defendant contends that the complaints cannot reasonably be construed as alleging property damage starting several years following completion of the condominiums during the April 18, 2000 to April 18, 2001 policy period. Since there is no duty to defend allegations of property damage falling outside the scope of the policy, defendant argues it cannot be found to have breached any duty to defend.

I reject defendant's argument. The Vista House Amended Complaint contends that in February 2001, the plaintiffs in the Vista House action hired an independent consultant to inspect Vista House and began discovering deficiencies in the construction of the three buildings. Exh. A to Baird Affid. at ¶ 9. It is reasonable to infer that some property damage prompted the hiring of a consultant and thus, occurred before February 2001. But, the allegations are ambiguous about exactly when the property damage became apparent and thus, it is possible, and not unreasonable, to assume that at least some property damage did not occur until sometime after April 18, 2000, or that other property damage did not occur until between February 2001 and April 18, 2001.

Thus, the Amended Complaint filed by the Association and the Third-Party Complaint filed by Bingham, do not support only one conclusion but rather, could support a jury verdict that some entirely new property damage occurred during defendant's policy period. Although a jury would not be required to make such a finding, the allegations at issue could certainly support the determination that a defect, which had previously caused no damage

or damage only to some other property, had caused property damage which appeared for the first time during the policy period.

Because all ambiguities with respect to coverage are construed in favor of the insured, defendant had a duty to defend and plaintiff is entitled to summary judgment on this issue.

IV. Duty to Indemnify

In contrast to the duty to defend, the duty to indemnify is based on the actual facts. Western Equities, 184 Or. App at 374, 56 P.3d at 434-35 (duty to indemnify is independent of the duty to defend; duty to indemnify is established by proof of facts demonstrating a right to coverage).

Plaintiff argues that there is no genuine issue of material fact that covered property damage took place during defendant's policy period, triggering the duty to indemnify. Defendant contends that there was no duty to indemnify because the alleged property damage commenced before defendant's policy period.

Based on the summary judgment record, there appears to be no dispute that construction defects, including those in Harver's work, were present from at least the completion of construction in 1997, well before the policy period. The issue then, is whether the fact that the defect occurred before the policy period is enough to demonstrate a lack of coverage, and if not, whether the evidence presently in the record is sufficient to show that a defect caused property damage which occurred for the first time during the policy period. I conclude that covered property damage is distinct from the initial defect and that the record does not support summary judgment in either party's favor on indemnity. I cannot say that no reasonable juror could find in favor of

11 - OPINION & ORDER

plaintiff or in favor of defendant on the issue of whether any new property damage occurred during the policy period.

Defendant initially argues that if the defect did not occur in the policy period, there is no coverage. This argument renders "defect" synonymous with "property damage." The policy language does not support such an interpretation.

The policy provides that defendant will pay for damages caused by property damage. It defines "property damage" as a physical injury to tangible property, or loss of use of tangible property that is not physically injured. A defect, however, by itself, does not necessarily constitute physical injury to tangible property or create the loss of use of tangible property. Nor does this record establish that property damage immediately follows the manifestation of a defect. Thus, a defect is not equated with property damage.

The policy additionally provides that the "property damage" must be caused by an "occurrence" taking place in the coverage territory. Although the coverage territory has not been raised as an issue in the case, this provision shows that an "occurrence," defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions that happens during the term of this insurance[,]" "the cause," is separate and distinct from the property damage, "the result." The construction defects at issue in the underlying litigation are properly considered as accidents, or occurrences, causing the property damage. Again, a defect is not equated with property damage.

The language unquestionably shows that the <u>cause</u> of the resulting property damage (the accident) and the resulting property

12 - OPINION & ORDER

damage itself (the physical injury to tangible property), are distinct. Accordingly, the relevant question becomes what evidence in the record shows when any property damage occurred.

In support of its argument that the record conclusively shows that at least some property damage occurred for the first time during the policy period, plaintiff relies on the affidavit of Mark Lawless, president of Construction Systems Management, Inc. (CSMI), which provides various design and construction services to its clients, including construction defect analysis and defect repair and cost estimating. Rev. Lawless Affid. at ¶ 1. In 2004, CSMI was retained as a design and construction consultant to assist Harver in its defense against the claims brought by Bingham regarding the Vista House condominiums. Id. at ¶ 2. CSMI's scope of work included analysis of the investigation reports from the Association's expert, actual investigation of the Vista House structures, and maintaining a CSMI representative on site from one to three days per week. Id.

The Association had retained Raymond Bartel, an architect and building envelope failure/water intrusion consultant, to investigate the sources of water intrusion on the project. Id. at ¶ 3. On April 9, 2003, Bartel issued a report of his findings which concluded that a "'general building envelope failure is underway at Vista House Condominiums' which lead to extensive water damage to components of the Vista House buildings." Id. According to Lawless, the Bartel report identified numerous specific design and/or construction defects that led to water intrusion and resulting damage. Id. Based on the findings set forth in the Bartel report, the Association filed its underlying action against

13 - OPINION & ORDER

Bingham. Id.

According to Lawless, numerous defects were identified in the work performed by Harver, including improper installation of EIFS, tile veneer, substrates, framing moisture barriers, flashing, and sealants. Id. at ¶ 6. There were also confirmed instances of improperly constructed deck to wall interfaces, improperly installed roof components, and improperly installed windows and doors. Id. Plaintiffs in the underlying lawsuit alleged, and CSMI's investigation verified, that the defects identified in the Bartel report and plead as allegations in the underlying action, led to water intrusion which in turn led to extensive property damage to the Vista House building envelope, structural members, insulation, windows, doors, floors, and also resulted in widespread rot, mold, and corrosion to Vista House components and structural members. Id. Each of the separate defects in Harver's work allowed water intrusion into different areas of the buildings. Id.

Lawless states that

> [t]he defects alleged and confirmed at Vista House were present from initial completion of the buildings until repairs were completed in 2005. These defects allowed water to enter through the defective conditions in the building exterior, causing resulting damage to other components of the structure. Consequently, damage to the Vista House structures caused by the alleged and confirmed defects took place from the time the building construction was completed in 1997 and continued over the years without interruption until such time as the Association completed its repairs in 2005.
>
> Until the buildings were repaired in 2005, water intrusion took place continually over time during periods of precipitation. During each year from 1997 through 2005, water intrusion caused additional damage to new parts of the interior of the buildings which had not previously been damaged. The water intrusion damages at the buildings would have taken place before, during and after the time period of 4/18/00-4/18/01. There is no rational method for determining how much of the damage

14 - OPINION & ORDER

took place during any particular period of time.
Rev. Lawless Affid. at ¶¶ 7, 8.

Plaintiff principally relies on the following facts: (1) that the damage from the defects took place from the completion of construction in 1997 and continued without interruption until completion of repairs in 2005; (2) that during each year from 1997 to 2005, water intrusion caused additional damage to previously undamaged, new parts of the interior; and (3) that it is impossible to determine how much of the damage took place during any particular period time.

Based on these facts, plaintiff contends that it is undisputed that at least some new damage occurred during the policy period, thereby triggering defendant's duty to indemnify.

Although defendant does not submit contradictory evidence to undermine Lawless's assertions, defendant stresses that Lawless's affidavit itself, by stating that the damage took place from the completion of construction in 1997 and continued over the years without interruption, shows the property damage at issue commenced prior to the policy period, making it ineligible for coverage under the second sentence of the policy's definition of "occurrence."

The evidence clearly shows that hundreds of construction defects occurred in the Vista House condominium project, causing extensive property damage of different types, ranging, presumably, from structural problems caused by wet drywall, to mold, to disfiguration and staining. The evidence also shows that the property damage occurred at different times from 1997 to 2005.

The problem with granting summary judgment to either side is exemplified by a hypothetical. If a particular defect has allowed

15 - OPINION & ORDER

water to leak into the structure, it may first begin to damage a stud. Property damage to that stud has obviously commenced. With time, more and more of the stud suffers damage from the continued water exposure. Next, building material in contact with the stud may begin to suffer damage. This could, for instance, be drywall or insulation or both. As with the stud, over time, more and more of the drywall or insulation suffers damage from the continued water exposure. After some period of time, interior material in contact with the drywall, such as the floor or carpet or wall covering, may begin to suffer damage. As with the stud and the drywall, more and more of the carpet, floor, or wall covering may then become damaged over time.

The question that arises is whether the policy treats the spreading damage as one continuous incident of property damage, or whether it treats each type of property (studs, drywall, insulation, carpet, floor, wall covering) as a new and separate incident of property damage. It is not clear on this record that Lawless's affidavit demonstrates that any property not previously damaged suffered property damage for the first time during the policy period.

I conclude that under the policy, each separate type of "property" is new property damage. As noted above, "property damage" is defined in the policy as "[p]hysical injury to tangible property, including all resulting loss of use of that property." Exh. E to Baird Affid. at p. 23. I find the use of the word "that," rather that the word "the" preceding the second use of the word "property," instructive. If the policy referred to "the property" at the conclusion of the definition, the policy would

16 - OPINION & ORDER

make a general reference to a more inclusive idea of all the injured tangible property. This would suggest that once any tangible property had suffered physical injury, all tangible property had, for coverage purposes, begun to suffer physical injury.

However, by stating "that property" instead of "the property," the policy suggests that there are particular kinds or types of tangible property, indicating that injury to studs is distinct from injury to drywall, etc.

Moreover, the policy bundles together the physical injury to tangible property with the loss of use of that property, and mandates that both the loss of use and the physical injury occur at the time of the physical injury. In the hypothetical above, loss of use of the affected condominium may not have occurred when damage was limited to the stud. Yet, under defendant's interpretation of the policy, any later loss of use caused by the spreading water damage that began with damage to the stud and ultimately led to damage to the floor and carpet, would be deemed to have occurred at the time of the first injury to the stud. And, thus, there would be no coverage for the loss of use of the carpet or the floor, even though the first loss of use of those materials may not have occurred until the time covered by the policy, because the first injury to stud commenced prior to the policy period.

This is an unreasonable interpretation of the policy. The only reasonable interpretation of the policy is that by making loss of use and physical injury to the tangible personal property occur at the time of the physical injury, an injury to a different type of tangible personal property is to be considered new property

17 - OPINION & ORDER

damage. That is, the first damage to the stud is considered physical injury to tangible personal property and any spreading or extension of the damage to that stud or its surrounding studs is deemed to have commenced at the time the stud first suffered damage.[1] But, when the damage from the stud extends to the drywall, the first damage to the drywall is to be considered new property damage. Extension or spreading of the damage to that drywall is deemed to have commenced at the time that drywall first suffered damage. When damage first extends to the floor or the carpet, new property damage once again occurs.

Defendant fails to show that no new property damage, as I have just interpreted "new property damage," occurred during the policy period. Lawless's affidavit, uncontested by defendant, suggests that there may have been new property damage, again as I have just interpreted it, during the policy period. Thus, defendant's motion for summary judgment must be denied.

Lawless's affidavit does not provide a sufficient basis upon which to grant summary judgment to plaintiff on the duty to indemnify. The affidavit, while making clear that damage continued over the years without interruption, including "additional damage to new parts of the interior of the buildings which had not previously been damaged[,]" does not conclusively establish that any particular new property damage first occurred during

---

[1] Damage to a stud in one building commencing hypothetically in 1996 after the sale of the first units and caused by one construction defect does not mean that damage to a stud in a different building two years later caused by a different construction defect is damage deemed to have occurred in 1996 when the first stud was first damaged.

18 - OPINION & ORDER

defendant's policy period. It simply creates a question of fact on that issue. Accordingly, plaintiff's motion for summary judgment must also be denied.

## CONCLUSION

Plaintiff's motion for summary judgment (#22) is granted as to the duty to defend, but is otherwise denied. Defendant's motion for summary judgment (#27) is denied.

IT IS SO ORDERED.

Dated this __9th__ day of __February__, 2006.

/s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

19 - OPINION & ORDER